

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-01011-CR

Elva L. **MONTEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 700499
Honorable Mary D. Roman, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:          Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 30, 2024

AFFIRMED

Appellant Elva L. Montez challenges the trial court's denial of her motion to dismiss for

lack of a speedy trial. We affirm.

### BACKGROUND

On January 13, 2023, Montez was arrested on suspicion of driving while intoxicated. On

July 20, 2023, Montez filed a motion seeking a dismissal for violation of her speedy trial rights or,

alternatively, for "trial in this case [to] be scheduled within the next two weeks." On July 25, 2023,

the trial court concluded it lacked jurisdiction to rule on the motion because the State had not yet filed a charging instrument.

On September 15, 2023, the State filed an information charging Montez with operating a motor vehicle while intoxicated. On September 25, 2023, Montez filed a second motion for speedy trial that was identical to the motion she filed in July.

The trial court heard and denied Montez's motion on October 10, 2024. The same day, Montez pleaded nolo contendere to the charged offense and the trial court signed a judgment of conviction. Montez then timely filed this appeal to challenge the trial court's denial of her speedy trial motion. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02 (defendant who has been convicted on plea of nolo contendere may appeal "those matters which have been raised by written motion filed prior to trial"); TEX. R. APP. P. 25.2(a)(2)(A) (same).

## ANALYSIS

### *Standard of Review and Applicable Law*

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to a speedy trial. U.S. CONST. amend. VI; *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). When a defendant claims she was denied her right to a speedy trial, courts consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "If the defendant can make a threshold showing that the interval between accusation and trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). In reviewing the trial court's application of the *Barker* factors, "we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those

facts necessary to support the trial court's findings." *Id*. at 767–68. We may not consider evidence that was not before the trial court when it ruled. *Id*. at 768. "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review *de novo*." *Id*.

### *Application*

### *Length of Delay*

In conducting a *Barker* analysis, "[w]e measure the length of delay from (1) the time the accused is arrested or charged to (2) the time of trial or the defendant's demand for a speedy trial." *State v. Lampkin*, 630 S.W.3d 559, 563 (Tex. App.—San Antonio 2021, no pet.). A delay "approaching one year" is presumptively unreasonable so as "to trigger the *Barker* enquiry." *Balderas*, 517 S.W.3d at 768 (internal quotation marks omitted). Texas courts generally agree that a delay of eight months is the minimum necessary to trigger a full *Barker* analysis. *See, e.g.*, *Roque v. State*, 693 S.W.3d 771, 776 (Tex. App.—Houston [14th Dist.] 2024, no pet.); *Bosworth v. State*, 422 S.W.3d 759, 768–69 (Tex. App.—Texarkana 2013, pet. ref'd); *Russell v. State*, 90 S.W.3d 865, 872 (Tex. App.—San Antonio 2002, pet. ref'd).

The record shows Montez was arrested on January 13, 2023 and first asserted a violation of her right to a speedy trial on July 20, 2023, approximately six months later.[1] At that time, she had not yet been formally charged with a crime, so the trial court concluded it lacked jurisdiction to consider her motion.[2] Montez cites no authority holding that the six-month delay between her

---

[1] In her brief, Montez contends that she appeared before the trial court and requested a jury trial on March 14, 2023; April 25, 2023; May 25, 2023; July 5, 2023; August 7, 2023; and September 25, 2023. While the record shows Montez filed written motions alleging a speedy trial violation on July 20, 2023 and September 25, 2023, it contains no support for her assertions that she requested a trial on the other dates listed in her brief. Accordingly, we may not accept those assertions as fact. *See, e.g.*, *Janecka v. State*, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996); *Salazar v. State*, 5 S.W.3d 814, 816 (Tex. App.—San Antonio 1999, no pet.).

[2] The United States Supreme Court has held that "[i]nvocation of the speedy trial provision . . . need not await indictment, information, or other formal charge." *United States v. Marion*, 404 U.S. 307, 321 (1971). However,

arrest and her first assertion of her speedy trial right was presumptively unreasonable so as to trigger a full *Barker* analysis, and we have found none. *See Balderas*, 517 S.W.3d at 768; *Russell*, 90 S.W.3d at 872.

After the State formally charged Montez by information on September 15, 2023, she filed a second speedy trial motion on September 25, 2023, and the trial court heard the motion two weeks later. Accordingly, the record shows an eight-month delay between Montez's arrest and her second assertion of her speedy trial right and a nine-month delay between her arrest and the hearing on her motion.[3] The State concedes on appeal that this delay is sufficient to trigger an analysis of the other *Barker* factors. *See Balderas*, 517 S.W.3d at 768; *Russell*, 90 S.W.3d at 872.

Nevertheless, a delay that is sufficient to trigger a *Barker* analysis does not necessarily weigh heavily against the State. In deciding that question, we must "consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002). The eight-to-nine-month delay at issue here "just exceeds the minimum needed to trigger the other *Barker* factors[.]" *State v. Slack*, 629 S.W.3d 735, 739–40 (Tex. App.—San Antonio 2021, no pet.) (concluding eleven-month delay, while presumptively unreasonable, did not weigh heavily in favor of finding speedy trial violation). This factor therefore does not weigh heavily against the State. *Id.*; *State v. Fisher*, 198 S.W.3d 332, 338 (Tex. App.—Texarkana 2006, pet. ref'd) (concluding ten-month delay should not "be accorded more than a slight weight against the State").

---

because Montez has not argued that the trial court erred by concluding it lacked jurisdiction to rule on her first speedy trial motion, we do not consider that question.

[3] During the hearing on Montez's motion, the State represented, "The case is set for trial tomorrow. . . . The state is ready right now." The case did not proceed to trial because Montez pleaded no contest on the same day the trial court denied her speedy trial motion.

*Reasons for Delay*

In assessing the reasons for the delay, "we assign different weights to different reasons." *Balderas*, 517 S.W.3d at 768. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. In contrast, "[d]elay caused by either the defendant or his counsel weighs against the defendant." *Balderas*, 517 S.W.3d at 768. "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Here, the parties agree the State did not offer a reason for the delay. Additionally, there is nothing in the evidence to support a finding that Montez caused the delay. This factor therefore weighs against the State, but not heavily. *See id.*

*Defendant's Assertion of Right to Speedy Trial*

"The third *Barker* factor—the defendant's assertion of [her] right to a speedy trial—is entitled to strong evidentiary weight in determining whether the defendant has been deprived of that right." *Balderas*, 517 S.W.3d at 771. "The defendant has no duty to bring [her]self to trial; that is the State's duty. But a defendant does have the responsibility to assert [her] right to a speedy trial." *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (footnote omitted). "A defendant's lack of a timely demand for a speedy trial indicates strongly that [s]he did not really want one." *Balderas*, 517 S.W.3d at 771.

Even when a defendant timely complains of a speedy trial violation, a motion that seeks dismissal instead of a trial "will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. "This is not to say, however, that asking only for dismissal will result in a 'waiver,' while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim." *Philips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983). "Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Id.* "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, [s]he should provide cogent reasons for this failure." *Cantu*, 253 S.W.3d at 283.

As noted above, the record shows Montez first asserted a violation of her speedy trial right six months after her arrest, and again eight months after her arrest. We conclude these invocations of the right were timely under these circumstances. Additionally, both motions requested a trial "within the next two weeks of this filing."

But both motions also primarily sought an outright dismissal and requested a trial only "[i]n the alternative" to that primary relief. *See id.* Indeed, on appeal, Montez describes those filings as "motions for speedy trial *and to dismiss*" (emphasis added). While this alternative request for relief does not automatically weigh against Montez, *see Philips*, 650 S.W.2d at 401, neither of her motions offered any reasons why she failed to seek a trial before requesting dismissal. *See Cantu*, 253 S.W.3d at 283. The trial court therefore could have reasonably found that she "was not truly interested in a speedy trial[.]" *See Laird v. State*, 691 S.W.3d 30, 42 (Tex. App.—Austin 2023, pet. ref'd) ("[A]lthough [appellant] was persistent in filing pro se motions for speedy trial, it is significant that most of his filings requested in the alternative that his case be dismissed."); *see also Philips*, 650 S.W.2d at 401.

In short, some evidence on this factor supports Montez's claim of a speedy trial violation, while other evidence detracts from that claim. Accordingly, this factor does not weigh in favor of either Montez or the State.

*Prejudice to the Defendant*

"The fourth *Barker* factor focuses on prejudice to the defendant because of the length of delay." *Balderas*, 517 S.W.3d at 772. This prong requires us to "consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id*. "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*. While a defendant bears the burden "to make some showing of prejudice," she need not prove actual prejudice. *Id*.

Montez testified that she was incarcerated for two days immediately following her arrest; she did not allege or present evidence that she suffered any anxiety or concern during the pretrial process. She testified that she had been required to use an ignition-interlock device on her vehicle since February 14, 2023, but she did not testify about any financial or emotional concerns associated with the device.[4]

In her speedy trial motion, Montez argued she "ha[d] a limited recollection of the incident giving rise to the filing of the pending charges" and that "[t]his lack of memory significantly hinder[ed] [her] defense" and "rendered [her] defense meaningless." During the hearing on her motion, she did not present any evidence to support these assertions. She argued, however, that

---

[4] Because Montez was arrested for driving while intoxicated, the magistrate who released her on bail was required to order her to use an ignition-interlock device unless he or she found "that to require the device would not be in the best interest of justice." *See* TEX. CODE CRIM. PROC. ANN. art. 17.441.

she was prejudiced by the State's delay in bringing her to trial because she lost the ability to offer testimony from three former co-workers. She testified that she had worked with all three co-workers on the day of her arrest, she was arrested after she left work that day, and she did not go anywhere else between leaving work and her arrest. She further testified that if her three co-workers were available to appear at trial, they would be able to discuss whether she appeared intoxicated before she left work.

When a defendant seeks to establish prejudice based on lost testimony, she "must show the witness was unavailable at the time of trial, the testimony that would have been offered was relevant and material to the defense, and due diligence was used to locate the witness for trial." *Russell*, 90 S.W.3d at 873. We will assume without deciding that Montez's testimony showed her three co-workers' testimony would have been relevant and material to her defense. Her testimony also established, however, that she did not make any effort to find those individuals to testify on her behalf. Montez testified that she did not know how to contact the co-workers because she and they had all left their employment at the restaurant where they worked together, she did not know their last names, and she did not have their contact information. But she also conceded that she did not ask her former boss if he knew how to contact the three co-workers.[5] Based on this testimony, the trial court could have reasonably found Montez failed to establish that she used due diligence to locate the three co-workers. *See Marquez v. State*, 165 S.W.3d 741, 750 (Tex. App.—San Antonio 2005, pet. ref'd). The trial court also could have reasonably found Montez did not satisfy her burden to show they were unavailable. *See id.* We conclude this factor weighs against a finding of a speedy trial violation. *See, e.g.*, *Voda v. State*, 545 S.W.3d 734, 744–45 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

---

[5] Montez testified that she did not interact with her former boss on the day of her arrest.

*Balancing the Factors*

Having outlined the evidence relevant to the four *Barker* factors, "we must now balance them." *Balderas*, 517 S.W.3d at 773. And we must do so "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* (internal quotation marks omitted).

Weighing in favor of finding a violation of Montez's speedy trial right are the facts that the delay was presumptively prejudicial, she asserted her right to a speedy trial relatively quickly, and the State did not offer a reason for the delay. *See Zamorano*, 84 S.W.3d at 654. But the delay extended only slightly beyond the bare minimum necessary to trigger a *Barker* analysis. *See Slack*, 629 S.W.3d at 739–40. Moreover, the record supports a finding that Montez sought an outright dismissal rather than a speedy trial. *See Cantu*, 253 S.W.3d at 283. Finally, the trial court could have reasonably concluded that Montez did not show she was prejudiced by the delay. *See Voda*, 545 S.W.3d at 744–45.

We hold that the four factors, balanced together, weigh against finding a violation of Montez's right to a speedy trial. *See Slack*, 629 S.W.3d at 742. We therefore overrule Montez's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH